HAIR v. BURNELL et al.

(Circuit Court, S. D. Iowa, C. D. December 31, 1900.)

1. MANDAMUS — AGAINST OFFICERS OF PRIVATE CORPORATION — COMPELLING TRANSFER OF STOCK.

Mandamus is an appropriate remedy, both at common law and under Code Iowa 1897, § 4341, to compel the president and secretary of a private corporation to issue certificates of stock in such corporation, and deliver them to plaintiff, and to transfer the same to plaintiff's name on the books of the corporation where he has become the legal owner of the stock by a purchase of the same at a sale on execution issued on a judgment against the former owner.

2. EXECUTION — SALE OF CORPORATE STOCK — IOWA STATUTE.

Under the Iowa statute, as construed by the supreme court of the state, stock in a corporation which stands on the books in the name of a judgment debtor may be levied upon and sold under an execution issued against him, although the creditor has actual notice that the stock has been sold by the debtor to a third person who is in fact the owner.

3. FEDERAL COURTS — POWER TO ISSUE WRIT OF MANDAMUS — ENFORCEMENT OF JUDGMENT.

When the marshal has sold stock in a private corporation under an execution issued on a valid judgment rendered by a federal court against the owner, and the officers of the corporation refuse to issue a certificate for such stock to the purchaser, or to transfer the same to his name on the books, the court has authority to compel such action by a writ of mandamus, which in such case is a process in execution necessary to make the sale effective, and the proceeding therefor ancillary to the original suit.

Petition for Writ of Mandamus. On demurrer to answer and return to alternative writ.

Wambach & Kroeger, for plaintiff.
Dunshee & Dorn and Binford & Snelling, for defendants.

McPHERSON, District Judge. In October, 1886, at the suit of plaintiff herein against defendant Burnell in an action at law on due proceedings, this court, having undisputed jurisdiction, rendered a judgment in favor of said Hair and against said Burnell for a sum greater than $3,000, with interest and costs. In September, 1900, that judgment was credited with $500 on account of a levy on and sale of some corporation stock, the subject of controversy herein. Other than said credit, the judgment is in no part satisfied, and is yet in full force. In August, 1900, a writ of execution was issued by virtue of said judgment, and by the marshal a levy was made on some corporation stock, viz. of the Interstate Tracer Company, an Iowa corporation doing business in Marshalltown, Iowa. This levy was made August 27, 1900, and due notice thereof given to all parties defendants herein. Defendants make a contention about what was done, but it amounts to nothing more than criticism, and no fact by them pleaded puts any matter in issue. September 27, 1900, after due proceedings, the corporation stock was by the marshal sold to plaintiff, as the highest bidder, for $500. The marshal executed to plaintiff a bill of sale therefor, and the judgment given credit for that amount. Plaintiff has made the proper demand for the stock, and meets with a refusal. An alternative writ to defendants was issued. Defendants all appeared, and demurred to the petition, which was overruled. A full answer and return was ordered, which has been made, to which plaintiff demurs. No issuable fact is pleaded, and no material allegation of plaintiff's petition is put in issue. In addition to the foregoing facts, by the answer it appears that for many years up to July, 1900, defendant Burnell owned all the corporate stock of said company. He then claims to have sold all the stock to defendant Egermayer, secretary of the company. I treat the case as though the stock was then sold, although the contract, made part of the answer, shows that Egermayer holds it as a security for his contract. At the marshal's sale Egermayer proclaimed himself to be the owner of the stock, which notice plaintiff heard, but did not heed, and he bought the stock. At the time of said levy said corporate stock stood in the name of Burnell, and not until several days thereafter was it transferred on the books to Egermayer. But it was so transferred prior to the sale on execution by the marshal. I have heard the demurrer and all the facts. When defendants demurred to the petition, I gave the case but little attention, preferring to consider the case later. I therefore overruled the demurrer, with the expressed intention of not binding myself or estopping any of the parties by the ruling. There are but two questions worthy of consideration:

1. Will the action of mandamus which plaintiff brings give the desired relief, viz. compel the defendants, as president and secretary of the corporation, to turn over to plaintiff the corporate stock he bought at the marshal's sale, and have the transfer thereof made on the stock books of the company? The Iowa statute (Code 1897), which has been in force since 1851, is as follows:

"Sec. 4341. Definition. The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust or station. Where discretion is left to the inferior tribunal or person, the mandamus. can only compel it to act, but cannot control such discretion."

It is not material whether the Iowa statutes upon the subject are binding upon this court, because the foregoing statute is a correct and tersely stated definition as it existed at common law. It is true, as counsel state, that usually the writ is applied for when against a political or municipal corporation, or an officer, commanding such corporation or officer to perform a public duty. But the remedy also exists against a corporation for pecuniary profit and its officers. This is conceded by counsel herein, and cannot be denied by any one familiar with the question. Upon the undisputed facts of this case we have the following: A judgment was rendered by this court in 1886 for more than $3,000 in favor of plaintiff herein, and against Burnell, defendant herein. The judgment remains in force. No part of it has been paid, excepting by the sale of stock herein. Execution under the judgment issued, and by virtue thereof, after due proceedings, the marshal sold and plaintiff bought all the stock of this domestic corporation. To-day he owns all the stock. But the stock has not been delivered to him, nor has the transfer thereof, nor any of it, been made upon the books of the company to the plaintiff. Now, why should not defendants Burnell, as president, and Egermayer, as secretary, of the company, not transfer this stock to plaintiff, the owner, and why not make the proper transfer of his stock on the stock books? They refuse to do either. Why should not a court, by its writ, compel them to do both? What writ, other than mandamus, is the suitable writ? I know of no reason and know of no other writ as simple and as effective. The objections urged do not convince me as having any weight.

It is urged that plaintiff can bring an action against the corporation or its officers for damages. Possibly they are insolvent. In any event, plaintiff owns all the stock, and he is entitled to its transfer, and to its possession. He has the right, free from claims of all others, to vote the stock, name the officers, and dictate the policy of the corporation. The officers named by him have the right to employ servants and assistants of their choice, and not those preferred by Burnell and Egermayer. Plaintiff, or the officers selected by him, have the right to fix all salaries. As it is now, Burnell and Egermayer are not only controlling the salaries, but they take all the net receipts for their own salaries, their salaries varying as the receipts vary. But it is urged that many bad things may happen, one of which is that, if plaintiff gets his stock, and it is transferred on the books to him, then the corporation will be—and also Burnell and Egermayer—involved in litigation. But it is the litigation covered by the pleadings in this case that is now being considered. Future litigation will be taken care of as it arises. There are two answers to all this: (a) If defendants will suffer any wrong, or if they are placed in a position where they cannot turn safely to either the right

or the left, they are themselves only to blame. Neither the plaintiff nor the court can be blamed. (b) Justice Clifford, in U. S. v. Board of Sup'rs Johnson Co., 6 Wall. 198, 18 L. Ed. 768, points out the remedy. Let them plead the writ as a bar. The state courts in the future, as in the past, will recognize the defense. But, if the state court should not, then the federal courts will review the action of the state court, and give all parties such protection to which they are entitled. I have assumed that plaintiff is the owner of all the corporation stock. And he is. It is true that Egermayer pleads he bought the stock, some time prior to the levy by the marshal,—all the stock,—and was in possession thereof at the time of both the levy and the sale. Suppose all this is true. He further pleads that just prior to the sale he told plaintiff and all others of his ownership and his rights. This is all granted. All these are sham issues, or, rather, no issues at all. He does not plead that at the time of the levy the stock had been transferred to him on the stock books of the company. It is conceded that, at the time the execution writ was levied by the marshal upon the corporation stock in question, all of said stock on the stock books stood in the name of defendant Burnell, the judgment debtor. The corporation in question is an Iowa corporation, existing only by virtue of Iowa statutes, and doing business in Iowa. It is subject only to Iowa laws. The transfer of its corporate stock is controlled only by Iowa statutes. And whether its stock is subject to levy, the Iowa statute controls. Therefore the Iowa statute is to be alone considered. And the construction of the Iowa statute has been made by the Iowa supreme court. This is an end of all controversy. The Iowa supreme court in the case of Screen Co. v. Stodghill, 103 Iowa, 437, 72 N. W. 669, has but recently decided that if upon the corporation books stock stands in the name of the judgment debtor, it can be levied on and sold; and this in the face of the fact that the creditor has actual notice that the stock has been sold, and actual notice of the fact that the debtor does not own, but has sold, the stock. So I conclude no showing has been made against the plaintiff. Plaintiff owns all the stock of the said company. He has the right to have all said stock delivered to him, and have it in his possession. He has the right to have it all transferred to him on the stock books of the company. All this being denied to him, the writ of mandamus is the writ to enforce the foregoing.

Can this court aid the plaintiff by a writ of mandamus?

2. Of all the foregoing I had no doubt at the time the case was argued orally. Can this court grant the writ of mandamus in this case? That this court has no power to issue the writ of mandamus excepting in an ancillary proceeding is too well settled to more than state. That this court is a court of limited jurisdiction is conceded by all. But that this court has all the powers of any trial court when jurisdiction once attaches is equally well known. When it does have jurisdiction, it has all the powers of any court. With these things in view, what is the situation? In 1886 plaintiff obtained a judgment against the defendant in this court. The jurisdiction of this court in that case is not denied, is not disputed, and is conceded by all. When did the jurisdiction end? Did the jurisdiction of this court end with

the rendition of the judgment? No one claims that. Did the jurisdiction of this court end with the issuance of 'the writ of execution? Did it end with the service of the writ, and the levy of the marshal, and the sale of the corporate stock? Respondents so claim, and this is the question for determination. The power of the court to render judgment is not questioned. But now I am asked to conclude that mere rights on paper are the rights given to plaintiff; that shadows, rather than substance, are what was given to plaintiff. I do not so believe. I suppose a court of equity would have jurisdiction to give plaintiff relief. But that does not aid us. I suppose a court of law could award plaintiff damages. But that is not the test. The question is, did the powers of this court end with the rendition of the judgment, the issuance of the writ of execution, a levy thereunder, and a sale? Must plaintiff go to some other court for aid in this case? So respondents claim. And it is so claimed because it is conceded this court is of limited jurisdiction. It is so claimed because this court has no original jurisdiction in a case of mandamus. But the principles of both statutory and the common law require this court to issue all writs for the enforcement of its judgments. The Revised Statutes of the United States (section 716) provide that this court "shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." That this court is authorized, as an ancillary proceeding to its original jurisdiction, to issue a writ of mandamus, has been by the supreme court held over and over again. But it is said this is usually done against counties and cities, against which there is no other remedy, because a general execution cannot issue against, nor a levy be made on, the property of such a corporation. But in Iowa, at least, a general execution can issue against a county or city, and its property can be sold at execution sale. Code Iowa 1897, § 3973. Of course, a court house, or city hall, or poor farm, or other property necessary to carry on the county or city government, cannot be levied on and sold. But other property of such a corporation is subject to levy and sale. But this court has power to issue its process to execute its judgments. In the case of City of Memphis v. Brown, 97 U. S. 302, 24 L. Ed. 924, Justice Strong said:

"A mandamus to collect a tax for the payment of a judgment, or a mandamus to pay a judgment, is a process in execution, and nobody has ever questioned the power of a court to control its own final process."

The sale in question of the corporation stock was not completed. The stock must be delivered, and the transfer made, before its completion. This court is not only of limited jurisdiction, but cannot enforce its own decrees if this writ cannot issue. Its jurisdiction attached in the case in which judgment was rendered. Such jurisdiction is not exhausted as long as anything remains to be done in, about, or concerning the judgment. "Process subsequent to judgment is as essential to judgment as is antecedent process, else judicial power would be incomplete, and entirely inadequate for the purpose for which it was conferred by the constitution," said Justice Clifford in U. S. v. Board of Sup'rs Johnson Co., 6 Wall. 187, 18 L. Ed. 773. It

is to me not a logical argument to urge that the better way would be to turn the matter over to a court of equity or to a state court. It was said in the leading case upon this subject,—Commissioners v. Aspinwall, 24 How. 376, 16 L. Ed. 735:

"No court having proper jurisdiction and process to compel the satisfaction of its own judgment can be justified in turning its suitors over to another tribunal to obtain justice. A court of equity is only used when the law is inadequate to enforce its own judgment or afford the proper remedy."

Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253, is of like effect.

That the issuance of a mandamus to enforce a judgment and its satisfaction is only ancillary can be doubted by no one who reads the Aspinwall Case, and believes in it as an authority. When plaintiff bought the stock at public sale the defendant Burnell was entitled to have the price credited on the judgment. This has been done. Plaintiff was entitled to have the property he bought. This he has not received. He is entitled to the stock, and to a title thereto. The bill of sale by the marshal does not suffice. He should have the possession of the stock. He should have the legal title thereto, and the only legal title is the entry on the stock books. It was the duty of the marshal to give him all this. But defendants have thwarted the marshal. The process of this court has not fully served its purpose. It is ancillary to consummate it. The judgment debtor, Burnell, is a party to this proceeding. He is president of the corporation. Egermayer, the secretary of the corporation, is a party to this proceeding. He pretends to have some claim by purchase, or as security, to the stock. But any claim he had, regardless of any and all notice plaintiff had, was wholly without merit as against an execution writ against Burnell, and a levy on the stock, which, on the books, stood in the name of Burnell. There is no issue of fact to be heard. All the parties are before the court. Neither the writ of execution nor the process of this court is exhausted. This proceeding is all ancillary to the former acquired jurisdiction of this court. At the hearing it was argued over and over again that in case of sale on execution of real estate mandamus would not lie for possession. The common law did not allow that, and the Iowa statute forbade it. But the Iowa supreme court, by mandamus, compelled a railway corporation to construct a crossing for the use of the plaintiff. The same court, by a like writ, compelled an insurance company to make an assessment to pay a judgment. And the cases are many in number by the state courts, by the federal circuit courts, and by the supreme court, wherein mandamus was issued to compel officers of both municipal and business corporations to perform their duties. But, suppose the Iowa statutes allowed no remedy by mandamus? Suppose either affirmatively, or by absence of an Iowa statute, no such remedy existed? Then, would it be claimed no remedy exists? If such be the contention, then we would all say in the language of the supreme court:

"The constitution itself becomes a mockery if the state legislatures may at will annul the judgments of the federal courts, and the nation is deprived of the means of enforcing its own laws by the instrumentalities of its own tribunals."

In my opinion, the judgment in this case should be as follows:

(a) All the outstanding stock in the hands of Egermayer, or possibly by him transferred, should be surrendered or canceled.

(b) A like amount of stock, being all the capital stock of said corporation, should be issued to plaintiff, and the certificates of said stock actually delivered to plaintiff.

(c) Said transfers of said stock should be made on the books of the said corporation. Such a judgment is accordingly ordered, and which judgment will provide for the issuance of a writ of mandamus to compel obedience by said officers of said corporation to said judgment, and said writ will issue, and defendants will pay all costs.

The judgment will give defendants an exception and 60 days in which to file a bill of exceptions, if they desire one.