DEMPSTER MANUFACTURING COMPANY v. E. S. DOWNS,
Defendant, and M. MULLEN, Appellant.

**Corporate stock:** LIENS: NOTICE. A corporation may create a lien
on the stock of any holder thereof, to secure the amount of his
liability to the corporation, by a provision to that effect in its arti-
cles of incorporation; and the lien so created will be valid as
against third persons, though without actual notice thereof.

*Appeal from Polk District Court.*— HON. W. H. MCHENRY,
Judge.

WEDNESDAY, DECEMBER 14, 1904.

ACTION on note and account against E. S. Downs, with
prayer that amount found due be enforced as a lien against
his stock in the plaintiff company. This stock was assigned
to the defendant Mullen as security for some loans, and he
resisted the establishment of any lien in favor of plaintiff,
and prayed that its officers, who were made parties, be com-
pelled to transfer the stock to said Mullen on the books of
the company. Judgment was entered against Downs as
prayed, and the relief sought by plaintiff granted. Mullen
appeals.— *Affirmed.*

*Dale & Harvison,* for appellant.

*Dudley & Coffin,* for appellee.

LADD, J.— The Dempster Manufacturing Company was incorporated September 1, 1897, with a capital stock of $100,000, divided into shares of $100 each. Of these, 10 shares were issued to the defendant E. S. Downs. The certificates were to the effect that the shares were "fully paid and nonassessable, transferable, only on the books of the corporation in person or by attorney on surrender of the certificate," and the eighth article of incorporation reads, "The corporation shall have a lien upon the stock of any holder thereof for the amount of his liability to the corporation, and this lien shall not be discharged by a transfer of the stock except on a written resolution of the Board of Directors authorizing the transfer." On the 18th day of September, 1900, for full consideration, Downs executed his note to the company for $431.35, payable in one year, at 6 per cent. interest. In April, 1901, he entered into a contract with the company under which he was to handle its goods at New Ulm, Minn., on condition that these remained the company's property until paid for, and that the proceeds belonged to it. Goods on hand were returned to the company in the fall, and he is shown to have been indebted to it for a balance of $249.07 on December 12, 1901. Though questioned, the existence of the indebtedness to the company, not as assignee, as stated, is fully established by the evidence. On the 21st day of January, 1902, a dividend of $50 was declared on the stock, and this was applied by the company on the account. On the other hand, Downs borrowed $200 of the Citizens' Bank of New Ulm, Minn., on the 29th day of July, 1901, and, to secure the same, indorsed each certificate of five shares of stock: "For value received, I hereby sell, assign and transfer unto M. Mullen the five shares of the capital stock represented by the within certificate and do hereby irrevocably constitute M. Mullen my attorney to transfer the stock on the books of the within named corporation with full power of substitution in the premises. Dated July 29, 1901, E. S. Downs."

Another loan of $200 was procured in the same way August 14th following; another, of $300, September 12th; and on October 12, 1901, still another, of $50. These loans were made in reliance upon the stock as security, and without any actual notice of the provisions of article 8 or of the plaintiff's claims. Neither did the company have any knowledge whatever of these loans, or of the assignment and delivery of the certificates, until so advised by a letter from Mullen dated December 21, 1901.

The only question raised by the record is whether the plaintiff is entitled to enforce a lien for the indebtedness of Downs to it against the stock. At common law a corporation had no lien upon the shares of its stockholders for debts due from them to the company. Secret liens, as they impede the safe and speedy transfer of property, are always discouraged; and courts uniformly refuse to enforce the same, as against stock, unless created by statute, charter, or by-law of the company. *The Farmers' & Merchants' Bank v. Wasson,* 48 Iowa, 336. Our statutes are silent on the subject, but the powers which may be exercised by a corporation in effecting its objects are as broad and comprehensive as those of an individual unless expressly prohibited. *Thompson v. Lambert,* 44 Iowa, 239. See sections 1607, 1609, Code. Corporations are formed in this State by the adoption of articles of incorporation in pursuance of the general laws enacted by the Legislature, and such articles, in connection with the statutes, answer the same purpose as a special charter. They contain the terms of agreement between the company and its stockholders, and indicate the business to be transacted, and also the grant from the State of the franchise or right of forming the corporation and attaining the objects contemplated. The same rules of construction apply to articles of incorporation so adopted in pursuance of general laws as to charters granted by the special acts of the Legislature. *State v. Central Iowa Ry. Co.,* 71 Iowa, 410; Morawetz on Private Corp., section 318.

Provisions in special charters granted by the Legislature, declaring any indebtedness owing by the stockholder to the corporation a lien on his stock, are not unusual, and are enforced by the courts. *Union Bank of Georgetown v. Laird,* 2 Wheat. 390 (4 L. Ed. 269). A similar provision, when embodied in articles of incorporation, is neither inconsistent with the statutes, nor opposed to public policy. By accepting the stock in the corporation every stockholder assents to the terms and conditions found in the articles. Such lien is not prohibited, and may be created by the articles of incorporation. *Bradford Banking Co. v. Briggs & Co.,* 31 Ch. Div. 19; *Sabin v. Bank of Woodstock,* 21 Vt. 353; *Bohmer v. City Bank of Richmond,* 77 Va. 445; *Leggett v. Bank of Sing Sing,* 24 N. Y. 283; 1 Cook on Stockholders, section 522; Hillwell on Stockholders, section 166. Whether this may be accomplished by the enactment of a by-law is a controverted question, concerning which the authorities are in sharp conflict, but this court is committed to the doctrine that such power exists. *Farmers' & Traders' Bank v. Haney,* 87 Iowa, 101; *Des Moines Nat. Bank v. Warren County Bank,* 97 Iowa, 204. The main contention is that, though the lien existed as between the company and the stockholder, this would not affect the interest in the stock acquired by a third person without notice. That such is the rule with respect to liens created by by-laws was recognized in the decisions last cited. The by-laws of a private corporation are not in the nature of legislative enactments, so far as third parties are concerned. They are mere regulations or self-imposed rules for the management and control of the corporate affairs, and are not usually intended for strangers who do not subject themselves to their influence. But it is different with the provisions of the charter. The corporation is created by the adoption of the articles. These form the very basis of its existence. Every one who deals with it or its stock is charged with knowledge of their contents. To the end that the greatest publicity may be attained, as a

condition precedent to commencing business they are required to be recorded in the office of the recorder of deeds in the county where its principal place of business is to be kept, and filed and recorded with the Secretary of State. Counsel concede that where the lien is created by a general statute, or the provision therefor is a part of a special charter granted by the Legislature, it is enforceable against the whole world. This is because all are charged with knowledge of the law as contained in the Public Acts of the Legislature. For the same reason, every one who acquires certificates of stock must be assumed to know that they were issued by virtue of articles of incorporation, and that these may be found in the office of the Secretary of State. Indeed, the very object of requiring the filing and recording the articles is to give them the same publicity, as nearly as may be, as statutory charters, and render them easily accessible to all who may be interested in ascertaining their contents. These articles are expressive of the relative obligations of the company and stockholders, and inhere in the certificates of stock, in whosesoever hands they may come. The certificates are undoubtedly continuing assurances of ownership, but the ownership is such as is stipulated in the articles. Says Morawetz in his work on Corporations: "If the lien is provided by the company's charter or articles of association, or by general law, all persons purchasing shares are bound thereby, and must, at their peril, inquire of the company's officers whether the holders of the shares are indebted to it or not." See, also, Jones on Pledges, section 221 *et seq.* Moreover, section 1626 of the Code provides that " the transfer of shares is not valid, except as between the parties thereto, until regularly entered upon the books of the company "; and, in construing this language in *The Ottumwa Screen Co. v. Stodgill,* 103 Iowa, 437, the court held that such invalidity was not dependent on the absence of notice. In the instant case, however, the entire indebtedness to plaintiff had accrued prior to any information of the transfer to

Mullen reaching the company. We think the interest so acquired was subject to the lien of the company for the indebtedness owing it, and that this attached to the dividend declared during its existence. Angell & Ames on Corporations, section 355; 2 Cook on Corporations, section 526.—
*Affirmed.*